[No. 37051. Department One. April 9, 1964.]

ARMSTRONG CONSTRUCTION COMPANY, INC., *Respondent and Cross-appellant,* v. RALPH E. THOMSON *et al., Appellants,* ROBERT M. JONES *et al., Respondents.*\*

*James J. Keesling,* for appellants.

*Lewis S. Armstrong* and *Caley & Armstrong,* for respondent and cross-appellant.

*Lycette, Diamond & Sylvester* and *Albert O. Prince,* for respondents Jones *et al.*

\*Reported in 390 P. (2d) 976.

Hale, J.—These are such stuff as dreams and law suits are made on—a builder, an architect, an owner, and great expectations unfulfilled.

Ralph and Margaret Thomson set out to build the house of their dreams. They would build it high on a hill overlooking the moving waters of Puget Sound amidst the serene splendor of the sun setting behind the towering Olympics. They spoke of their hopes to Alan Liddle, and he said he would design the house; and Alan Liddle did design a house of such overwhelming beauty that Ralph and Margaret Thomson fell in love with it and would have no other. He pictured it on their land facing just the right way, with the right view of the sea and mountains and not too strong a glare from the sun, but preserving, too, on the land some trees to give balance to the lovely scene. And Armstrong, the builder, said he would build the house in just this way— and to leave everything to him. Thus the idyl began, but no one of them reckoned with the quiet demands of the government. And not remembering thus, the dream was shattered.

Both Jones and Liddle, the architects, and Armstrong Construction Company, the building contractor, inadvertently overlooked the mundane provisions of the King County zoning code and building ordinances requiring a 25-foot setback in the backyard from the south property line, and they forgot the King County ordinances fixing minimum standards for location of the septic tank and sewer pipe.

Ample evidence supports the trial court's findings of fact. Jones and Liddle, licensed professional architects, after nearly a year of consultations with the Thomsons, designed a house for them on their marine and mountain view lot in the Marine Hills Division area of King County. Architectural drawings of the house allowed maximum view of water and mountains consistent with optimum protection from the sun and received the Thomsons' approval both in their detail and placement on the lot. The Thomsons paid the architects $2,100 in part payment for their services, the total fee to be 10 per cent of the entire cost of construc-

tion. Armstrong Construction Company, in the contract dated April 7, 1960, agreed to build the house for $28,347 exactly as pictured, planned and specified, and to commence work as stated in the construction contract "on or before 10 days after receiving building permit." The builder likewise agreed in the contract "To give all requisite notices to the proper authorities; obtain all official inspections, permits, . . . and pay all proper and legal fees for same."

April 28, 1960, the contractor applied to the King County Engineer's office for a building permit, paying a filing fee of $31.40. A prerequisite to its issuance was a report from a licensed sanitary engineer of soil percolation tests; to perform these tests, the land had to be bulldozed so that true elevation could be established. Accordingly, the contractor paid $331 for the bulldozing, leveling and excavating, and $45 to a sanitary engineer for making the tests of and report on the proposed sanitary system.

But, before the building permit issued, the contractor started construction. On an occasion when the Thomsons were present, the architect and builder staked out the exact outline of the house on the lot, and the builder, having already leveled and excavated, proceeded to build the foundation on May 13, 1960. He spent $1,741.38 in labor and materials. After the foundation had been poured, the building permit issued on May 20, 1960. Shortly thereafter, the county building inspector brought the work to a halt when he notified the contractor that he was unable to verify the property lines. Inspection and measurements proved the south or rear setback to be only 10 feet instead of the minimum 25 feet required by both the zoning code and the building permit. The Thomsons declined proffered changes either in design or location of the house to enable the architect and builder to accommodate it to the 25-foot setback requirements. They did apply for a variance permit to allow the house to be built as designed and placed, but when this was denied by the planning commission refused to go ahead with the project.

Armstrong Construction Company brought this action against the owners to foreclose a lien of $1,741.38 filed by it for work performed and materials used in excavating and pouring the foundation, and to recover $407.40 for three other expenditures: $331 for the leveling of the lot in making it ready for the percolation tests, $31.40 for the building permit fee, and a $45 fee paid the sanitary engineer for his testing and report. Defendants Thomson joined the architects, Jones and Liddle, as third-party defendants asking a return of their $2,100 advance to the architects. They also asked for judgment against the architects for any amounts the builder might recover from them and an attorney's fee of $950 for their costs in defending the lien foreclosure action brought by Armstrong Construction Company.

In answer, the architects asserted that expenditures made and costs incurred by the builder were chargeable to the latter's negligent failure to observe the written conditions of the contract requiring issuance of a building permit before starting construction and the owner's failure to insist upon it. Other claims made by the parties seem without merit and will not be mentioned.

Allowing plaintiff building contractor judgment for only the $407.40, the trial court held the three items included thereby to be the only expenditures properly made and hence chargeable to the owner under the contract before the issuance of a building permit. It gave the contractor judgment and decree of lien foreclosure in this amount and a $250 attorney's fee. It denied all other recovery to the builder. It allowed defendants Thomson judgment against the architects for their architects' fee of $2,100, plus the $407.40, and the $250 attorney's fee, making a total judgment of $2,757.40, but disallowed the claimed attorney's fee of $950.

The Thomsons' appeal raises but one noteworthy question. Where, by reason of oversight, negligence, or breach of contract by an architect, his client becomes involved in litigation with others, are attorney's fees reasonably incurred in defending such litigation allowable as consequen-

tial damages to the client for the architect's oversight, negligence, or breach of contract?

Since pioneer days in this jurisdiction, attorney's fees have been left to the agreement of the parties. RCW 4.84-.010. Where, by agreement of the parties or otherwise, attorney's fees are allowed, the amount thereof shall be as the court finds reasonable. RCW 4.84.020. But in no event are they to exceed the amount fixed by agreement of the parties. The attorney's fees recoverable as costs to the prevailing party (RCW 4.84.030) are nominal only in Washington, being fixed at $10 by statute in actions going to judgment in the superior court without a jury. RCW 4.84.080(2).

We should make it clear that the court has already allowed appellants Thomson judgment against the respondent architects for the $250 attorney's fee allowed the builder in his lien foreclosure proceeding. The attorney's fee sought by and the denial of which brought on this appeal is the fee for services of counsel in defending the lien foreclosure.

■ This court, in *State ex rel. Macri v. Bremerton,* 8 Wn. (2d) 93, 111 P. (2d) 612, reviewed many of the authorities on the allowance of attorney's fees and, in denying them, said:

"In absence of contract, statute, or recognized ground of equity, a court has no power to award an attorney's fee as part of the costs of litigation. . . ."

This rule governs the action between the parties to the transaction whence the cause of action arose. In those actions, where the acts or omissions of a party to an agreement or event have exposed one to litigation by third persons—that is, to suit by persons not connected with the initial transaction or event—the allowance of attorney's fees may be a proper element of consequential damages. In *Murphy v. Fidelity Abstract & Title Co.,* 114 Wash. 77, 194 Pac. 591, we held attorney's fees reasonably incurred in defending a quiet title action to which plaintiff was subjected by reason of an abstracter's error were properly an element of his damages. We said this again in *Wells v.*

*Aetna Ins. Co.*, 60 Wn. (2d) 880, 376 P. (2d) 644, with the statement:

"These cases hold that when the natural and proximate consequences of a wrongful act by defendant involve plaintiff in litigation with others, there may, as a general rule, be a recovery of damages for the reasonable expenses incurred in the litigation, including compensation for attorney's fees."

■ The fulcrum upon which the rule balances, then, is whether the action, for which attorney's fees are claimed as consequential damages, is brought or defended by third persons—that is, persons not privy to the contract, agreement or events through which the litigation arises. In the instant case, both the builder and the architect were privy to the construction contract; therefore, neither could be classified as third persons and the trial court properly excluded the owner's claim for attorney's fees reasonably incurred in defending the builder's lien foreclosure action.

Armstrong Construction Company, respondent, cross-appeals on the court's refusal to allow it judgment for all of its expenses for labor and materials in doing the work up to the point where it was required to desist, and also for loss of profits. It attributes these losses to the architects' oversights and to acquiescence by the owners when they were present at the staking out of the house.

■ We agree that the architect should be deemed the agent of the owner (*Clark v. Fowler*, 58 Wn. (2d) 435, 363 P. (2d) 812), and that the plans and specifications were a part of the contract between owner and builder even though so construing them creates an ambiguity requiring oral testimony to resolve. *Brown v. Poston*, 44 Wn. (2d) 717, 269 P. (2d) 967. And we affirm the holding in *Ericksen v. Edmonds School Dist. No. 15*, 13 Wn. (2d) 398, 125 P. (2d) 275, that the owner impliedly warrants to the builder that the plans and specifications furnished to the builder are workable and sufficient.

But most of the expenditures needlessly made by the builder here can readily be attributed to his commencement of work before the issuance of a building permit. The

trial judge had ample evidence to support his finding that the plaintiff builder knew of the King County ordinances and setback requirements and showed want of diligence and ordinary care in assisting the architects in misplacing the house on the lot. Knowledge of the setback requirements, coupled with the contractor's duties set forth in the contract to procure all permits, inspections and official certificates, we think, support the finding of the trial court that, had the builder followed the terms of the contract and withheld construction until a building permit issued, all expenditures would have been avoided except the $407.40 expended in obtaining the permit. Therefore, the trial court properly limited the builder's recovery and lien to that amount plus a $250 attorney's fee incurred in foreclosing the lien.

Other assignments of error urged by the parties and argued in the briefs have been disposed of by necessary implication or are of insufficient merit to warrant further discussion of them.

The judgment is, therefore, affirmed.

OTT, C. J., ROSELLINI and HUNTER, JJ., and MURRAY, J. Pro Tem., concur.

---

June 3, 1964. Petition for rehearing denied.