[No. 32825-5-I. Division One. May 1, 1995.]

WASHINGTON MUTUAL SAVINGS BANK, *Appellant*, v. THE DEPARTMENT OF REVENUE, ET AL, *Respondents*

*Foster Pepper & Shefelman,* by *David Utevsky* and *Warren J. Rheaume,* for appellant.

*Christine O. Gregoire, Attorney General,* and *Susan Y. Price, Assistant; Norm Maleng, Prosecuting Attorney,* and *Margaret A. Pahl, Deputy,* for respondents.

KENNEDY, A.C.J. — Washington law establishes two different methods for the taxation of improvements constructed on public lands by private parties who have leased such lands from governmental bodies. RCW 82.29A.020(2)(a) provides that improvements constructed on public land by a lessee are subject to leasehold excise taxation "to the extent that the improvements become the property of the lessor". Improvements which do not become the property of the lessor within the meaning of this statute are subject to ad

valorem personal property taxation under RCW Title 84. In this action we must determine whether the improvements under the lease at issue are subject to ad valorem taxation as personal property under RCW 84.36.005 or to leasehold excise taxation under RCW 82.29A.020(2)(a).

Washington Mutual Savings Bank (the Bank) and its predecessors in interest paid ad valorem personal property taxes under protest on improvements constructed on public land leased by Richard Hedreen from the Seattle School District. The Bank appeals a summary judgment dismissing its suit against the Washington Department of Revenue, the King County Assessor and King County (Respondents) for recovery of the taxes paid under protest. The Bank raises two arguments: (1) that the lease agreement at issue here, when analyzed as a whole, shows that the parties intended the school district to own the improvements from the inception of the lease; and (2) that improvements "become the property of the lessor" within the meaning of the leasehold excise tax statute if they must be surrendered to the lessor at the expiration or termination of the lease.

We disagree with both of the Bank's contentions. First, by the plain language of the lease agreement the improvements here at issue are to remain the property of the lessee during the term of the lease and will not become the property of the lessor until the expiration or earlier termination of the lease. Second, the Bank's proposed interpretation of RCW 82.29A.020(2)(a) would render the words "to the extent" contained in that section superfluous and would create a conflict between that section and other language contained in RCW 82.29A.160. The trial court properly construed both the lease agreement and the taxation statutes. Accordingly, we affirm the trial court's grant of summary judgment to the Respondents.

FACTS

The Lease

The facts are not in dispute. In October 1985, Seattle School District entered into two 99-year ground leases with Richard Hedreen. One of the leases required Hedreen to con-

struct and operate office/retail space on the property formerly occupied by Jefferson School. The improvements were to be made according to a design concept approved by the school district. Hedreen could not replace the improvements with improvements of lesser value and was required to give the district notice of any proposed changes in the plans. Hedreen was required to restore any damaged improvements. In the event of condemnation, Hedreen and the district would receive the value of their respective interests in the improvements. Hedreen was to maintain property damage insurance, naming the district as an additional insured.

The lease agreement may be terminated sooner than in 99 years under various circumstances, including the election of the district to use the premises for educational purposes at any time after 1990. At the expiration or earlier termination of the lease, the premises and improvements are to be surrendered to the district.

Section 8.5 of the lease provides:

> During the term of this Lease, the Improvements constructed by Lessee . . . shall be the property of Lessee. At the expiration or earlier termination of this Lease, the Improvements . . . shall become the property of the lessor.

Clerk's Papers, at 65.

The lease provides for minimum rents, plus additional rents based on project net income. Hedreen agreed to pay the leasehold excise tax assessed on contract rents under RCW 82.29A, and in addition to pay when due "the leasehold excise tax in respect of any payment or obligation hereunder which is deemed to be taxable rent under said statutes". Clerk's Papers, at 60 (section 4.1 of the lease agreement). Hedreen also agreed to pay all taxes due with respect to the premises, all taxes imposed on personal property of the lessee and "[a]ll assessments for improvements or benefits which are assessed during the term of this Lease". Clerk's Papers, at 60 (section 4.2 of the agreement).

### The Lawsuits

Hedreen completed the improvements and commenced operating the commercial property. From 1987 to 1991, King

County assessed ad valorem personal property taxes on the improvements pursuant to RCW Title 84. Hedreen paid the taxes under protest, and in 1989 commenced an action for recovery of the taxes paid under protest. Hedreen and the county settled this first lawsuit.

In January 1990, a receiver was appointed for Hedreen's interest. The receiver paid the 1990-1991 ad valorem taxes under protest, and filed the current lawsuit in February 1992.

Thereafter, the Bank foreclosed on Hedreen's interest, purchased it at a sheriff's sale, and was substituted for the receiver as plaintiff.

Both parties moved for summary judgment, the Respondents arguing that, as a matter of law, the improvements were subject to taxation under RCW Title 84 and the Bank arguing that, as a matter of law, the improvements were subject to taxation under RCW 82.29A. The trial court granted the Respondents' motion and denied the Bank's motion. This timely appeal followed.[1]

### DISCUSSION

Under Const. art. 7, § 1 (amend. 81) and RCW 84.36.010, all property belonging to the United States, the State of Washington, any county or any municipal corporation is exempt from taxation. All other property in Washington is subject to assessment and taxation based upon valuation (ad valorem taxation). RCW 84.36.005. A leasehold interest in public land is exempt from ad valorem taxation, however. Washington imposes instead a leasehold excise tax on "taxable rent", which is equivalent to "contract rent". *See* RCW 84.36.451(3); RCW 82.29A.020(1), .030; *Japan Line, Ltd. v. McCaffree*, 88 Wn.2d 93, 98, 558 P.2d 211 (1977).

Contract rent includes, in addition to periodic rent payments, "expenditures for improvements to the property *to*

---

[1]When reviewing a summary judgment, this court engages in the same inquiry as the trial court. Because the parties dispute the legal conclusions resulting from the facts, but not the facts themselves, the issues can be decided as a matter of law. *See, e.g., Marincovich v. Tarabochia*, 114 Wn.2d 271, 274, 787 P.2d 562 (1990).

*the extent that such improvements become the property of the lessor."* (Italics ours.) RCW 82.29A.020(2)(a). Improvements are taxed under either the leasehold excise tax or the ad valorem property tax, but not both. RCW 82.29A.160.

## Contract Interpretation

The Bank argues that the lease, when read as a whole, makes the improvements the property of the lessor. Given this, the Bank argues that the improvements are contract rent and should be taxed under the leasehold excise tax.[2]

As a contract, a lease can allocate who owns the improvements during and after the term of the lease, notwithstanding common law default rules. *Cf. SSG Corp. v. Cunningham*, 74 Wn. App. 708, 711, 875 P.2d 16 (1994) (modern rule is that intention of parties governs whether building constructed on leasehold is personal property of builder). Section 8.5 of the lease, entitled "Ownership of Improvements", states that the improvements are the lessee's property for the duration of the lease. Nevertheless, the Bank argues that the school district owned the improvements from the outset of the lease.

The Bank first relies on section 4.1 of the lease, which required Hedreen to pay the leasehold excise tax on the rents and on any other payments deemed contract rent that are found in the lease. The Bank argues that this section shows the parties' intent that the improvements be subject to the leasehold excise tax, so the improvements must be the property of the lessor. However, this section contains "catchall" language and does not refer to the ownership of the improvements. Moreover, section 4.2(c) of the lease obligates the lessee to pay all personal property taxes and assessments for improvements, suggesting that the parties recognized that the improvements might be subject to ad valorem taxation.

Second, the Bank argues that because the lessee already owns the right to use and occupy the land during the term of the lease, the phrase in section 8.5 of the lease

---

[2]The Bank relies only on the language of the instrument itself, and not on any parol evidence of the parties' intent.

stating that the improvements "shall be the property of the lessee" during the term of the lease should be interpreted to mean that the lessee acquired only the right to use and occupy the improvements during the term of the lease, and not the ownership of the improvements. This argument fails for two reasons. First, section 8.5 goes on to say that the improvements "shall become the property" of the lessor after the lease expires or is earlier terminated. If the lessee only owns a right to use and occupy the improvements and does not own the improvements themselves, this provision is unnecessary. Second, if "property" is equivalent only to "the right to use and occupy", when the improvements become the lessor's "property" the lessor only acquires the right to use and occupy them, leaving the improvements with succeeding leaseholds and no fee owner. Thus, the Bank's interpretation of the term "property" in section 8.5 would render that section internally inconsistent.

A more harmonious interpretation of section 8.5 is its plain meaning: that the lessee owns the improvements during the term of the lease and that the improvements shall become the property of the lessor at the expiration or earlier termination of the lease.

## Leasehold Excise Tax

■ The Bank urges this court to interpret the phrase "to the extent that such improvements become the property of the lessor" in RCW 82.29.020(2)(a) to mean that anytime a lessor of public land owns a future interest in the lessee's improvements, they will "become" the lessor's property. Therefore, posits the Bank, they should be considered contract rent subject to the leasehold excise tax. The only authority addressing the issue is Attorney General Opinion 8 (1977). Interpreting the "to the extent" language of RCW 82.29.020(2)(a), the Attorney General noted that improvements to public land are personal property, *i.e.*, they do not become real property although they may be affixed to the premises. AGO 8 (1977), at 2 (citing RCW 84.04.080). From this the Attorney General concluded that the ownership of "title" to the improvements, as established by the lease,

determines how the improvements are to be taxed. If the lessee owns the improvements, they are neither "publicly owned" nor "contract rent" and, therefore, are not exempt from ad valorem taxation. AGO 8 (1977), at 2-3. While the AGO is not binding on this court, it is entitled to considerable weight. *See American Legion Post 32 v. Walla Walla*, 116 Wn.2d 1, 9, 802 P.2d 784 (1991).

We agree with the reasoning of the AGO inasmuch as it states that improvements that are the property of the lessee during the term of the lease are not "contract rent" and, therefore, are subject to ad valorem property taxation.[3] In interpreting a statute, this court gives effect to the words of the statute with reference to the context of the word and the general purpose of the statute. *See PUD 1 v. WPPSS*, 104 Wn.2d 353, 369, 705 P.2d 1195, 713 P.2d 1109 (1985). The Legislature's use of the phrase "to the extent that", when referring to what improvements are not considered contract rent, shows that the Legislature recognized that the lessor and lessee could both own an interest in improvements. "To the extent that" the lessee owns the improvements, in this case during the term of the lease, they are to be taxed as personal property under RCW Title 84.

The Bank argues that this interpretation implicitly adds the term "immediately" into the statute, interpreting it to read "to the extent that the improvements *immediately* become the property of the lessor . . .". The language of the statute as found conveys the same meaning, however, without adding the additional term. The Bank ignores the "to the extent that" language, interpreting the statute as an all or nothing division of property rights in the improvements: if the lessor will *ever* own the improvements then the improvements are *always* going to be taxed under RCW 82.29A. Such an interpretation makes the "to the extent" language superfluous, something this court cannot do when interpreting statutes.[4] *See Progressive Animal Welfare Soc'y v. UW*, 125 Wn.2d 243, 260, 884 P.2d 592 (1994).

---

[3]We think it unnecessary to adopt the AGO's use of the term "title".

[4]Both parties cite statutory interpretation principles which suggest that, in the event of doubt, the statute should be construed against the other party. *See*

Furthermore, we cannot interpret statutes so as to conflict with other statutes where a harmonious interpretation exists. *See Draper Mach. Works, Inc. v. Department of Natural Resources*, 117 Wn.2d 306, 313, 815 P.2d 770 (1991). The Bank's interpretation would conflict, at least in part, with RCW 82.29A.160:

> Notwithstanding any other provision of this chapter, RCW 84.36.451 and 84.40.175, improvements owned or being acquired by contract purchase or otherwise by any lessee or sublessee which are not defined as contract rent shall be taxable to such lessee or sublessee under Title 84 RCW at their full and fair value *without any deduction for interests held by the lessor or others.*

(Italics ours.) This sentence reflects a legislative recognition that a lessor could have an interest in improvements, such as the future interest held by the Seattle School District here, but that the improvement could be owned by the lessee during the lease term and not be considered contract rent. By the Bank's position, any future interest held by the lessor in an improvement makes the expenditure for that improvement automatically contract rent. This vitiates RCW 82.29A.160, inasmuch as the statute includes future interests when it describes "interests held by the lessor". This court cannot adopt an interpretation creating such a conflict.

The Bank also argues that the AGO creates a distinction without a difference; that is, regardless of who owns the improvements, the lessee has the use of them only during the term of the lease, so the lessee might as well be leasing them. We agree with the Bank that the distinction between the lessee owning or leasing the improvements, particularly under a 99-year lease, is somewhat artificial. We recognize, though, that tax auditors and assessors need a bright-line rule for determining when the leasehold excise tax will apply

---

*Ski Acres, Inc. v. Kittitas Cy.*, 118 Wn.2d 852, 857, 827 P.2d 1000 (1992) (taxation statutes construed against taxing authority); *Corporation of Catholic Archbishop v. Johnston*, 89 Wn.2d 505, 507, 573 P.2d 793 (1978) (tax exemptions construed against the taxpayer). Because this unique statutory framework is such that the taxation and exemption from taxation are to be construed coextensively with one another, these guidelines are not helpful or persuasive. *Cf. MAC Amusement Co. v. Department of Rev.*, 95 Wn.2d 963, 966, 633 P.2d 68 (1981).

and when the ad valorem property tax will apply, without resort to complex analysis of the contract as a whole. Parties contracting leases of public lands are also well served by a bright-line rule: potential tax liabilities can be a determining factor as to whether to enter into a lease, or in negotiating the respective obligations of the lessor and lessee. We hold that where, as here, a lease plainly states that improvements are the property of the lessee during the term of the lease, the leasehold excise tax is inapplicable and the improvements should be taxed as the lessee's personal property under RCW Title 84.

*Affirmed.*

COLEMAN and WEBSTER, JJ., concur.