[No. 53630-3-I.   Division One.   February 14, 2005.]

BLUEBERRY PLACE HOMEOWNERS ASSOCIATION ET AL., *Plaintiffs*, v. NORTHWARD HOMES, INC., ET AL., *Defendants*, NORTHWARD CONSTRUCTION COMPANY ET AL., *Respondents*, MACDONALD-MILLER RESIDENTIAL, INC., ET AL., *Appellants*.

354

Steven J. Jager (of *Jager Law Office*) and *Nicholas L. Jenkins* (of *Lee, Smart, Cook, Martin & Patterson, P.S., Inc.*), for appellants.

*Robert J. Burke* and *Arthur D. McGarry* (of *Oles Morrison Rinker & Baker, L.L.P.*) and *Saphronia R. Young*, for respondents.

¶1 SCHINDLER, J. — MacDonald-Miller Residential, Inc. (MacDonald-Miller), one of the subcontractors for a condo-

minium construction project, appeals the trial court's award of attorneys' fees and costs in favor of Northward Construction Company (Northward), the general contractor, based on the theory of equitable indemnity. Northward cannot recover attorneys' fees and costs under the theory of equitable indemnity or the ABC rule if, in addition to the wrongful act or omission of MacDonald-Miller, there are other reasons why Northward was sued by the homeowners. *Tradewell Group, Inc. v. Mavis*, 71 Wn. App. 120, 857 P.2d 1053 (1993). The defective hydronic radiant heating system installed by MacDonald-Miller was not the only reason Northward was sued by the condominium homeowners. The trial court erred in ruling as a matter of law that Northward was entitled to an award of attorneys' fees and costs for defending the homeowners' claims under an equitable indemnity theory. We reverse and remand.

## FACTS

¶2 Northward was the general contractor for Blueberry Place, a 57 unit condominium development. Northward contracted with MacDonald-Miller to design and install a hydronic radiant heating system. The subcontract required MacDonald-Miller to design and install the heating system "in a first-class and workmanlike manner to the satisfaction of" Northward and to indemnify Northward for loss or damage.[1] MacDonald-Miller used plastic pipes manufactured by Plasco Manufacturing Ltd. (Plasco) for the hydronic radiant heating system it installed in the Blueberry Place condominiums.

¶3 Starting in June 2000, Blueberry Place homeowners reported heating system tube ruptures to MacDonald-Miller. In December 2001, the Blueberry Homeowners

---

[1] The subcontract provides, "The subcontractor will do all work in a first-class and workmanlike manner to the satisfaction of the . . . Contractor . . . ." Clerk's Papers (CP) at 298, P VII. The subcontract between MacDonald-Miller and Northward requires MacDonald-Miller to indemnify Northward for "loss, damage, and/or injury from act or omission of the Subcontractor . . . to the person or property of the parties hereto . . . and to the person or property of any other person or company . . . while engaged in the performance of these duties." CP at 298, P X.

Association and the individual homeowners (collectively, homeowners) filed a lawsuit against Northward, Mac-Donald-Miller, Plasco, and Blueberry Place Communities, L.P. The homeowners alleged the construction defects included "water penetration and damage at walls, windows and roofs; cracking, leaking and sagging foundations, drainage problems, [and] heating and plumbing defects, including hot water heating tank deterioration and tube ruptures."[2] The homeowners claimed Northward and MacDonald-Miller were liable for breach of contract and warranties, misrepresentation, negligent construction, and Consumer Protection Act (chapter 19.86 RCW) and product liability act (chapter 7.72 RCW) violations. While the terms of MacDonald-Miller's subcontract with Northward required MacDonald-Miller to pay Northward for any expense that was the result of MacDonald-Miller's failure to comply with the terms of the agreement, the subcontract does not contain a provision for attorneys' fees or for recovery of attorneys' fees in the event of litigation.[3]

¶4 In October 2002, Northward filed a third-party complaint and cross claims against MacDonald-Miller alleging breach of contract and requesting MacDonald-Miller defend and indemnify Northward against the homeowners' claims for the defective heating system. In September 2003, Northward filed an amended fourth-party complaint against MacDonald-Miller, alleging misrepresentation, unjust enrichment and constructive trust, common law indemnity and subrogation, and violation of the Consumer Protection Act.

¶5 On October 9, 2003, Northward settled all claims with the homeowners, "including those arising out of the hydronic heating systems."[4] As part of the settlement,

---

[2] CP at 29, P 109; CP at 269, P 116.

[3] The subcontract provides "Subcontractor will pay for any expense the Contractor or any other Subcontractor may suffer as a result of the Subcontractor's failure through causes within said Subcontractor's control to carry out the provisions of this agreement." CP at 298, P IX.

[4] CP at 293.

Northward assigned its claims against MacDonald-Miller to the homeowners but reserved its claim for the attorneys' fees and litigation costs related to defending the homeowners' defective hydronic heating system claims.

¶6 On October 17, 2003, Northward filed a motion for partial summary judgment asking the trial court to rule as a matter of law that Northward was entitled to recover attorneys' fees from MacDonald-Miller under the theory of equitable indemnity and determine the amount after an evidentiary hearing or trial. MacDonald-Miller argued the court could not award attorneys' fees to Northward under the theory of equitable indemnity because the homeowners sued Northward for construction defects unrelated to the hydronic heating system. Two days before the hearing on Northward's summary judgment motion, MacDonald-Miller settled all claims with the homeowners.

¶7 On November 17, the trial court granted Northward's motion for partial summary judgment. The court ruled that as a matter of law the attorneys' fees and costs incurred by Northward in defending the homeowners' claims related to the heating system were authorized under the theory of equitable indemnity (the ABC rule). MacDonald-Miller disagreed with the court's decision. To avoid trial, MacDonald-Miller stipulated to its inequitable conduct for purposes of the ABC rule and to entry of a judgment against it for Northward's attorneys' fees and costs as the consequential damages for defending the homeowners' claims related to the heating system.

## ANALYSIS

¶8 MacDonald-Miller contends the trial court erred when it ruled as a matter of law that Northward was entitled to attorneys' fees and costs incurred in defending against the homeowners' claims under the theory of equitable indemnity, also referred to as the ABC rule.

¶9 On review of summary judgment, this court engages in the same inquiry as the trial court. *Reynolds v.*

*Hicks*, 134 Wn.2d 491, 495, 951 P.2d 761 (1998). Summary judgment is properly granted when the pleadings and affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). Questions of law are reviewed de novo. *Wilson Court Ltd. P'ship v. Tony Maroni's, Inc.*, 134 Wn.2d 692, 698, 952 P.2d 590 (1998). Because the parties dispute the legal conclusions resulting from the facts, and not the facts themselves, the issues can be decided as a matter of law. *See Wash. Mut. Sav. Bank v. Dep't of Revenue*, 77 Wn. App. 669, 673 n.1, 893 P.2d 654 (1995).[5]

¶10 The rule in Washington is that absent a contract, statute, or recognized ground of equity, attorneys' fees will not be awarded as part of the cost of litigation. *Pa. Life Ins. Co. v. Dep't of Employment Sec.*, 97 Wn.2d 412, 413, 645 P.2d 693 (1982); *Tradewell Group, Inc.*, 71 Wn. App. at 126. One of the recognized equitable grounds under which fees may be awarded is the theory of equitable indemnity, or the ABC rule. Under this theory, "where the acts or omissions of a party to an agreement or event have exposed one to litigation by persons—that is, to suit by persons not connected with the initial transaction or event—the allowance of attorney's fees may be a proper element of consequential damages." *Armstrong Constr. Co. v. Thomson*, 64 Wn.2d 191, 195, 390 P.2d 976 (1964). "When the natural and proximate consequences of a wrongful act of A involve B in litigation with others, B may as a general rule recover damages from A for reasonable expenses incurred in that litigation, including attorney's fees." *Dauphin v. Smith*, 42 Wn. App. 491, 494, 713 P.2d 116 (1986).

---

[5] Northward contends the summary judgment standard of review does not apply here because of MacDonald-Miller's stipulation, and this court should apply a more deferential standard to determine whether there is *any* evidence in the record to support the trial court's decision. First, Northward mischaracterizes MacDonald-Miller's stipulation. Second, the issue on appeal is whether as a matter of law the trial court erred in ruling that the theory of equitable indemnification applies.

¶11 The elements of equitable indemnity are:

(1) a wrongful act or omission by A [MacDonald-Miller] toward B [Northward]; (2) such act or omission exposes or involves B [Northward] in litigation with C [the homeowner plaintiffs]; and (3) C was not connected with the initial transaction or event [breach of the construction contract], viz., the wrongful act or omission of A toward B.

*Manning v. Loidhamer*, 13 Wn. App. 766, 769, 538 P.2d 136 (1975). All three elements must be satisfied to create liability. *Id.* The trial court's decision that the elements of equitable indemnity are met and the ABC rule applies is a legal question subject to de novo review. *Tradewell*, 71 Wn. App. at 126-27.[6]

¶12 The parties disagree about whether, as a matter of law, the second element is satisfied. It is undisputed that while the failure of the hydronic heating system was one reason why the homeowners sued Northward, it was not the only basis for the homeowners' claims against Northward. The parties dispute whether other claims by the homeowners against Northward prevent an award of attorneys' fees under the ABC rule.

■ ¶13 *Tradewell* is dispositive. In *Tradewell*, this court held that "a party may not recover attorney fees under the theory of equitable indemnity if, in addition to the wrongful act or omission of A, there are other reasons why B became involved in litigation with C." *Tradewell*, 71 Wn. App. at 128. According to our decision in *Tradewell*, Northward cannot recover attorneys' fees and costs under the theory of equitable indemnity if, in addition to the homeowners' claims for the defective heating system installed by MacDonald-Miller, there were other separate claims by the homeowners against Northward.

¶14 Northward does not attempt to distinguish *Tradewell*. Instead, Northward argues that because it is

---

[6] If there is a legal basis for equitable indemnity, we review the trial court's findings and its determination of the amount for abuse of discretion. *Tradewell*, 71 Wn. App. at 127.

undisputed that Northward incurred $90,000 in fees and costs related to MacDonald-Miller's defective design and installation of the heating system, Northward is entitled to an award of those fees under the ABC rule. Northward's argument assumes that *Tradewell* does not address whether an award of the portion of B's (Northward's) attorneys' fees and costs that can be attributed to C's (the homeowners') claims against B (Northward) for the wrong caused by A (MacDonald-Miller) is authorized under the ABC rule. In fact, a similar situation was present in *Tradewell*, and the court rejected application of the ABC rule in these circumstances.

¶15 In *Tradewell*, Tradewell grocery store leased space from Wedgwood. Tradewell and Wedgwood negotiated an extension to the lease, which only Tradewell signed. When Tradewell met with a prospective purchaser of the grocery store, Craig Mavis, Tradewell falsely represented to Mavis that Wedgwood had signed the lease extension. When Wedgwood expressed concerns about Tradewell's prospective buyer, Tradewell agreed Wedgwood could negotiate directly with Mavis. Tradewell then told Mavis to make a written offer to purchase the grocery store. Mavis submitted a written offer of $500,000 and Tradewell accepted. When Mavis met with Wedgwood, he told Wedgwood that he had an agreement with Tradewell to purchase the store. After Mavis and Wedgwood signed a long-term lease, Mavis reduced his offer to Tradewell to $250,000. Tradewell rejected the reduced offer and the parties never reached agreement. Tradewell sued Mavis and Wedgwood.

¶16 Tradewell's claims against Mavis included breach of the agreement to purchase the store, promissory estoppel, unjust enrichment, and tortious interference. Tradewell's claims against Wedgwood included breach of the lease extension agreement, promissory estoppel, unjust enrichment, and tortious interference. At the conclusion of trial, the court dismissed Tradewell's claims and ruled in favor of Mavis and Wedgwood. Wedgwood then sought an award of costs and attorneys' fees against Tradewell and Mavis

under the doctrine of equitable indemnity. The trial court ordered Mavis to pay a portion of Wedgwood's fees. The court found that Mavis misrepresented the status of his agreement with Tradewell, which was a proximate cause of Tradewell's decision to sue Wedgwood. The trial court's award did not include the fees and costs Wedgwood incurred in defending against Tradewell's claims for promissory estoppel, tortious interference, and undue influence.[7] On appeal, this court reversed the trial court's decision to award Wedgwood the attorneys' fees and costs related to Mavis's misrepresentation based on an equitable indemnity theory because Mavis's conduct was not the only reason that Tradewell sued Wedgwood. *Tradewell*, 71 Wn. App. at 129.

¶17 As in *Tradewell*, Northward is not entitled to the attorneys' fees and costs it incurred in defending claims related to the defective heating system based on equitable indemnity because the homeowners sued Northward for independent and separate defective construction claims. Under *Tradewell*, even if it is possible to apportion attorneys' fees related to a particular claim, where there are additional reasons why the party seeking fees was sued, fees are not available under the theory of equitable indemnity.

¶18 Both parties cite and discuss *Armstrong*, 64 Wn.2d 191, a construction contract case where the court considered the availability of attorneys' fees under equitable indemnity. The *Armstrong* decision is consistent with this court's decision in *Tradewell*.[8] In *Armstrong*, a property owner, architect, and builder were all parties to a construction contract. After the builder began building the house according to the architect's plans, a city inspection revealed that the foundation violated setback requirements in the

---

[7] The court's award included fees and costs Wedgwood incurred in its efforts to establish its right to equitable indemnity. The trial court also ordered Tradewell to pay Wedgwood a portion of its fees and costs based on a provision in the lease between Tradewell and Wedgwood.

[8] Because we conclude the ABC rule does not apply, we need not address MacDonald-Miller's alternative arguments.

building permit and the local zoning code. The owner rejected proposed changes to bring the house into compliance with the building code, and the builder sued the owner for not paying for work performed and materials used. The owner then joined the architect and asked for a return of the architect's fee, indemnity for any judgment the builder obtained against them, and an award of the attorneys' fees the owner incurred in defending the action brought by the builder. The court held the owner could not obtain attorneys' fees from the architect because both the architect and the builder were parties to the construction contract. *Armstrong*, 64 Wn.2d at 196.

¶19 Relying on *Rogerson Hiller Corp. v. Port of Port Angeles*, 96 Wn. App. 918, 982 P.2d 131 (1999), Northward argues in the alternative that MacDonald-Miller's alleged bad faith litigation conduct provides an independent basis to award attorneys' fees on equitable grounds.[9] Although the issue of MacDonald-Miller's alleged bad faith litigation conduct was raised below by Northward,[10] it was not addressed by the trial court and we cannot on this record consider this argument for the first time on appeal. *See* RAP 2.5(a) (a party may present an alternate ground for affirming a trial court if the record has been sufficiently developed to fairly consider the ground). *See also Sorrel v. Eagle Healthcare, Inc.*, 110 Wn. App. 290, 38 P.3d 1024 (2002) (where the trial court had no opportunity to address an

---

[9] Bad faith litigation can warrant an award of attorneys' fees for three types of conduct: (1) prelitigation misconduct, (2) procedural bad faith, and (3) substantive bad faith. *Rogerson Hiller*, 96 Wn. App. at 927-30.

[10] Northward argued MacDonald-Miller engaged in misconduct when it failed to alert Northward of the likelihood of failure of the hydronic heating system at Blueberry Place, orally promised to provide Northward with a defense and indemnity but failed to do so, sought to avoid liability for construction defects, filed duplicitous pleadings, and filed a summary judgment motion that introduced additional issues into the litigation with the homeowners and thereby increased Northward's litigation costs. Below, Northward did not assert a claim against MacDonald-Miller under CR 11.

issue on summary judgment, appellate court would decline to consider it on appeal of summary judgment).[11]

## CONCLUSION

¶20  As a matter of law, Northward was not entitled to an award of attorneys' fees based on the theory of equitable indemnity. MacDonald-Miller's defective heating system was not the only reason the homeowners sued Northward. We reverse the decision of the trial court to award Northward the attorneys' fees and costs it incurred in defending the homeowners' claims for the defective heating system under the theory of equitable indemnity, and remand.[12]

Cox, C.J., and ELLINGTON, J., concur.

---

[11] Although Northward said it was prepared to present evidence at trial regarding MacDonald-Miller's alleged litigation misconduct, when MacDonald-Miller stipulated to inequitable conduct for purposes of the application of the ABC rule, the need for a trial was eliminated and Northward did not present its evidence to the court.

[12] Northward argues it is entitled to an award of attorneys' fees on appeal on the same grounds as it argued below. The party requesting fees on appeal is required by RAP 18.1(b) to argue the issue and provide citation to authority in order to advise the court as to the appropriate grounds for an award of attorneys' fees and costs. *Wilson Court Ltd. P'Ship,* 134 Wn.2d at 710 n.4. Because no basis for an award of fees on appeal has been established, we deny Northward's request for fees on appeal.