# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

EVANSTON INSURANCE COMPANY, an Illinois corporation, subrogee and an assignee of Western Refinery Services, Inc., a Washington corporation,

Respondent,

v.

PENHALL COMPANY, a California corporation,

Appellant.

No. 79657-7-I

DIVISION ONE

PUBLISHED OPINION

APPELWICK, J. — Penhall appeals the trial court's grant of summary judgment finding it must indemnify Evanston, the assignee of WRS, for a settlement of a construction contract dispute between WRS and Morse. Liability for the value of the settlement was predicated on a duty of indemnity and on the failure of Penhall, as subcontractor, to accept a tender by WRS of defense of the claims made by Morse. The WRS/Morse contract contained an arbitration clause; the Penhall subcontract did not. We hold Penhall did not have a duty to defend WRS because of the arbitration provision. Absent that duty, Penhall is not estopped from challenging the settlement as the proper measure of damages for breach of its contract with WRS. Attorney fees under equitable indemnity and contractual indemnity theories are recoverable when proven as consequential damages. Attorney fees awarded as damages under the ABC rule of equitable

indemnity in the case of a third party claim are limited to the fees incurred defending that action. The award of attorney fees incurred in this action prosecuting the collection under indemnity for the earlier settlement was improper under the equitable indemnity theory. Evanston did not specify it was seeking summary judgment on Penhall's affirmative defenses, and the trial court did not rule on Penhall's affirmative defenses on summary judgment. Summary judgment was not properly granted. We reverse and remand.

FACTS

1010 Morse Square LLC knew the concrete deck of a parking facility attached to its condominium building was so badly cracked that water was leaking on vehicles on the lower level. Morse contracted with Western Refinery Services Inc. (WRS) to address leaks in its parking facility. Morse believed that paving the top deck with asphalt would solve the leaking problem. WRS advised Morse that asphalt would not solve the problem by itself because it was not totally impermeable, and so would need a waterproof membrane to go underneath it. WRS contacted Penhall, whom they know to have experience with such membranes to inquire about the possibility.

Representatives of WRS and Penhall met to examine the parking garage. WRS originally wanted Penhall to apply a product called Petromat to waterproof the top deck. During the walkthrough, Penhall's representative indicated that Petromat would not be a suitable product for the structure. He instead suggested a waterproof membrane for the job. This initial walkthrough lasted only 10-15 minutes.

2

Penhall thereafter submitted a written bid to WRS. The bid was entitled "MEMBRANE WATERPROOFING PROPOSAL." In it, Penhall proposed installing "Waterproofing Method System C." "System C" is a specific type of membrane for which the Washington State Department of Transportation (WSDOT) provides specifications for installation. Penhall sometimes refers to the product as "WSDOT System C" or "System C." The membrane is made by applying a layer of heated granulated rubber with an asphalt oil binder to a surface and putting a fabric layer over so the mixture bonds with the fabric.

The bid explicitly excluded some items of work, including crack sealing and surface preparation, and indicated that testing by others must occur before asphalt is paved over the membrane. The bid included several conditions, including that "[n]othing in the resulting subcontract shall require [Penhall] to indemnify any other party from any damages including any expenses, attorney's fees, etc.) to persons or property for any amount exceeding the degree [Penhall] directly caused such damages." Penhall agreed to a two year warranty for the project. The contract did not contain an arbitration provision or a provision for attorney fees.

WRS accepted Penhall's bid, and submitted its own bid to Morse. WRS's contract with Morse included three items of work: installing a waterproof membrane system, overlaying the membrane with 1 ½ inch class G asphalt, and "[a]dd $6,900 for a double cool seal coat after paving." The contract contained an arbitration provision.

WRS and Penhall began work on the parking garage. Penhall installed a waterproof membrane, and WRS installed an asphalt overlay on top. WRS

3

thereafter inspected the work, said it "looked good" and proceeded to pave asphalt on top of it. Nothing in the record suggests that WRS tested whether the installation was in fact waterproof. WRS and Morse also declined to install a double seal coat over the asphalt, as was originally planned, because the "system [was] working" and they "didn't need to spend the $6900 for anything additional." WRS paid Penhall $53,988 for its work.

In the fall of 2014, after the project was completed, water continued to leak into the garage. WRS and Penhall both performed repairs in an attempt to remedy the situation. In April 2015, Penhall informed WRS that it would no longer participate in repairs because it had determined that further repairs were outside its agreed scope of work. Penhall asserted that the membrane was installed correctly, but that it had "no answer" for the ongoing leaks. Penhall asserted that its position was that System C was the incorrect product to waterproof the structure. It pointed to cracks in the concrete and movement issues with the structure as the "actual issue[s]" causing the continued leaking.

Thereafter, Morse contracted with F.D. Thomas, Inc. (FDT) to fix the leaks. FDT determined that it would remove Penhall's membrane and replace it with "Auto-Gard" urethane coating. It determined that in order for the coating to adhere it would need to first fill the cracks in the concrete. FDT's initial proposal called for repair of 500 linear feet of cracks. Its final contract with Morse called for the repair of 1,500 linear feet of cracks. The final cost of this work was $443,987.

Before FDT began work on the structure, Morse commenced arbitration against WRS pursuant to the arbitration clause in their contract. WRS informed

4

Penhall of the proceedings, it demanded indemnification and Penhall's participation in that matter, including investigations of the parking structure. Penhall refused. WRS settled the claim with Morse for $535,000. Evanston Insurance Company paid the settlement on behalf of WRS, despite having earlier sent WRS a letter declining to indemnify it in the matter. WRS assigned any rights it had to recover from Penhall to Evanston.

Evanston commenced suit against Penhall for breach of contract, breach of warranty, and indemnification. During discovery, Penhall sought to depose Evanston. Evanston objected and later sought a protective order regarding the requested deposition. The trial court granted the motion for a protective order.

Both sides moved for summary judgment. The trial court granted Evanston's motion. Because Evanston argued multiple grounds for relief, and the trial court did not articulate upon which ground it granted Evanston's motion either in the order or at the hearing, its reasons for doing so are unclear from the record.[1] Evanston petitioned for attorney fees. Penhall objected to the award of fees in its entirety. A dispute also arose between the parties concerning the reasonableness of a portion of the fees, and Penhall sought to view the billing records associated with those hours. The trial court granted the petition for fees in the amount of $109,689 and reserved judgment on the disputed portion pending in camera

---

[1] The trial court did not make oral findings on summary judgment. Rather, after hearing arguments from both sides, it took the matter under advisement. The order granting summary judgment did not contain detailed findings or indicate upon which theory the trial court was granting summary judgment. At oral argument on reconsideration, the trial court declined to enter more detailed findings because it said "the basis of the Court's conclusion in granting [summary judgment] was reasonably well laid out" in the order granting summary judgment.

review of the billing records.    The trial court eventually ordered an additional $68,952 in attorney fees.

Penhall appeals.

## DISCUSSION

Penhall argues the trial court erred in granting Evanston's[2] motion for summary judgment and in awarding attorney fees.  It also argues the trial court erred in quashing its motion to depose Evanston's counsel.

I.   Summary Judgment on Liability

Evanston sought summary judgment on the issue of liability.  Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  CR 56(c).  All facts and reasonable inferences must be interpreted in the light most favorable to the nonmoving party.  Sabey v. Howard Johnson & Co., 101 Wn. App. 575, 582, 5 P.3d 730 (2000).  We review summary judgment decisions de novo, engaging in the same inquiry as the trial court.  Kruse v. Hemp, 121 Wn.2d 715, 722, 853 P.2d 1373 (1993).

Evanston supported its motion with a declaration from expert Nate MacIntyre that asserted that Penhall's workmanship and materials were not adequate.  Specifically, he said, "Membrane System C was not the appropriate product for the parking structure and was not properly installed."  Evanston argued there had been a breach of contract and warranty.

---

[2]Evanston brought this suit against Penhall as an assignee of WRS.  As such, Evanston steps into the shoes of WRS, the assignor.  See Mut. of Enumclaw Ins. Co. v. USF Ins. Co., 164 Wn.2d 411, 424, 191 P.3d 866 (2008).

But, Penhall had pleaded affirmative defenses to Evanston's claim.[3] Evanston's motion for summary judgment did not specifically address the affirmative defenses. Given that WRS did not state with particularity that it was seeking summary judgment on the issue of affirmative defenses, Penhall cannot be said to have been given notice that summary judgment on the affirmative defenses was the relief sought. Robbins v. Mason County Title Ins., 5 Wn. App.2d 68, 84-85, 425 P.3d 885 (2018) ("Where, as here, the plaintiff does not request summary judgment on a number of affirmative defenses, CR 56(e) does not require the defendant to show an issue of fact concerning them."), affirmed, 195 Wn.2d 618, 426 P.2d 430 (2020). Penhall did not need to create a genuine issue of material fact under CR 56(e) with respect to the affirmative defenses because WRS had not moved for summary judgment on the defenses. Id. at 84. Penhall's affirmative defenses address both applicability of equitable indemnity and contractual indemnity, as well as mitigation of damages. The trial court has not ruled on the affirmative defenses.

---

[3] Penhall asserted five affirmative defenses in its answer to WRS's complaint: (1) WRS may have failed to mitigate its damages, such damages being specifically denied; (2) WRS's damages, such damages being specifically denied, were caused by its own design, or the design of others, and/or construction failures of other design and/or construction professionals for which Penhall had no responsibility and over whom Penhall had no control; (3) Evanston has failed to state a claim upon which relief can be granted; (4) WRS's work was performed, inspected and accepted by WRS and Morse Square Condos at the time it was completed. Having inspected and approved Penhall's work, WRS's claims are waived; and (5) Repairs, if completed as alleged, resulted in an improvement over and above the work contemplated and completed during the original construction of the project. WRS is not entitled to recover damages based on a repair scope of work that improved the quality of the structure or its component parts above which was originally contemplated and completed during original construction.

Even if we concluded the motion adequate to attack the affirmative defenses, we would conclude that summary judgment on liability was improper. Evidence in the record demonstrated questions of material fact.

In addition to its expert's declaration, Evanston also argued the contract with Penhall was to waterproof the parking deck, and since the deck continued to leak, Penhall must have breached its contract. And, it emphasized that Penhall chose System C and admitted it was the wrong product for the job.

Penhall was not a waterproofing consultant for Morse or WRS and was not hired to analyze the leak problem and recommend a best option from many. Penhall chose System C only in the sense that it was the only water proofing process it installs.[4] Penhall was asked by WRS to assist with the project. WRS knew Penhall used the System C process for bridges. Penhall was willing to apply the process to the parking garage deck.

Evanston mischaracterizes Penhall's statement that System C was the wrong product. When the deck leaked after completion of the paving, Penhall made efforts to stop the leaks. It was after exhaustion of those efforts when Penhall stated in a letter that its System C was "not the correct application for the ongoing movement issues with the structure." In a later deposition, it explained the statement,

> Yeah, it was -- we felt it was the right product when we installed it;
> we installed it correctly. Later on it came to light that there's way

---

[4] WRS originally contacted Penhall to install a product called "Petromat." Penhall's representative describes that product as a "reflective crack type thing" designed for asphalt, not concrete. In later communications, Penhall affirmed that System C is the only waterproofing product it installs.

more problems with that slab, nothing to do with us, that caused the product not to work correctly. Hence, the letter that came a year later.

The statement from Penhall was not an admission it breached the contract or the warranty. In that same communication, Penhall denied that System C failed and denied that the workmanship was inadequate. It noted contemporaneously that the structural problems with the parking garage might be the cause of the leaks, something System C could not address. Viewed in the light most favorable to the nonmoving party, this statement by Penhall does not support summary judgment on liability.

Evanston also asserted Penhall had liability under the theory of equitable indemnity. However, "a party may not recover attorney fees under the theory of equitable indemnity if, in addition to the wrongful act or omission of A, there are other reasons why B became involved in litigation with C." Tradewell Grp., Inc. v. Mavis, 71 Wn. App. 120, 128, 857 P.2d 1053 (1993).

The evidence presented did not establish that Penhall was solely responsible for the leakage, as would be required under the equitable indemnity theory. The preparation of the surface of the parking deck was the responsibility of either Morse or WRS, but not Penhall. Any preparation or repair of cracks in the concrete was the responsibility of either Morse or WRS, but not Penhall. When Morse retained a consultant and contracted to redo the work, it was necessary to do extensive work on the concrete and repair 1,500 linear feet of cracks in the structure. If this was necessary from the outset, it was work that was clearly outside the scope of Penhall's contract. And, any cracking that occurred after

9

Penhall completed its work that compromised the membrane could not provide a basis for liability under the warranty.

Further, the contract required that "[t]esting ([b]y others) must be performed prior to asphalt paving." WRS accepted Penhall's work upon completion. WRS did not test the surface for leaks before applying the asphalt coat on top of it as required by its contract with Penhall. And, WRS did not test the deck for leaks after paving. Morse and WRS decided not to apply the "'double seal' coat" to the asphalt. None of the evidence presented at summary judgment forecloses questions of fact about whether WRS's preparation of the surface or lack of preparation or its paving activity or its failure to apply the seal coats to the asphalt compromised the integrity of the waterproofing membrane.

Under the contract, Penhall was to apply the membrane where directed. Penhall was not responsible to independently determine where to apply the membrane or how to integrate it with the buildings attached to the parking garage. Morse or WRS was to make those determinations. It is clear the membrane did not cover the entire horizontal surface, leaving edges exposed, and areas where water could enter the cracked concrete from beyond the membrane. The evidence does not eliminate questions of fact as to whether the water was entering from outside the membrane covered area rather than through the membrane. Viewed in the light most favorable to Penhall, questions of fact exist as to breach and causation. The evidence was insufficient to support a grant summary judgment on the theory of equitable indemnity.

We vacate the grant of summary judgment on liability. We address the errors in the award of damages and attorney fees separately, since these issues will be considered again on remand.

II. Summary Judgment on Damages

The trial court determined at summary judgment that the settlement between WRS and Morse was the appropriate measure of damages between Penhall and WRS.

The damages argument at summary judgment was based on indemnity, either express or implied. The duty of indemnity was said to give rise to a duty to defend against claims by the owner, Morse. And, after failing to accept the tender of defense, Evanston argues Penhall is bound to indemnify it for the amount of its settlement with Morse Square. WRS relies on U.S. Oil & Ref. Co. v. Lee & Eastes Tank Lines, Inc., 104 Wn. App. 823, 840, 16 P.3d 1278 (2001). It claims that U.S. Oil stands for the proposition that "a party that denies it has a contractual obligation to defend and indemnify another party on their third party claim may not later challenge the reasonableness of the underlying settlement." WRS overstates U.S. Oil. The party who had a duty to indemnify and insure U.S. Oil against third party claims declined a tender of defense of a third party claim. Id. at 828. The court did not allow that party to challenge a settlement of the third party claim it refused to defend "in the complete absence of any evidence suggesting the settlement was unreasonable." Id. at 840. But, even if the trial court here had found a complete absence of any evidence suggesting the settlement was unreasonable, the facts here differ from U.S. Oil in significant ways.

11

Evanston relies on two theories of indemnity: express and equitable. The contract between WRS and Penhall states, "Nothing in the resulting subcontract shall require [Penhall] to indemnify any other party from any damages (including any expenses, attorney's fees, etc.) to persons or property for any amount exceeding the degree [Penhall] directly caused such damages." Though written in language of limitation, this provision is nonetheless an express agreement by Penhall to indemnify for damages it directly caused. This limitation to any indemnity under the contract includes indemnity under the warranty. However, the contract does not include an express provision requiring Penhall to defend WRS against a third party claim.

Evanston claims Penhall's breach of the contract also provides a basis for equitable indemnity under the "ABC rule,"[5] because the breach of contract by Penhall exposed WRS to liability to a third party. Though Penhall argues that the ABC rule is only applicable in tort cases, this court resolved that issue in Blueberry Place v. Northward Homes, 126 Wn. App. 352, 361-62 & n.8, 110 P.3d 1145 (2005), clearly applying the ABC rule in a contract breach context. But, even if that rule applies, it does not necessarily impose on Penhall a duty to defend WRS against any third party claim. Here, two issues make it inequitable to imply a duty to defend.

---

[5] The "ABC rule" embodies the theory of equitable/common law indemnity. See LK Operating, LLC v. Collection Grp., LLC, 181 Wn.2d 117, 123, 330 P.3d 190 (2014). The ABC rule requires: (1) a wrongful act or omission by A toward B, (2) that such act or omission exposes or involves B in litigation with C, and (3) that C was not connected with the wrongful act or omission of A toward B. Id.

First, Penhall's contract with WRS does not contain a warranty provision. However, Penhall affirmed that it warrantied its work for "workmanship and materials" in several written communications with WRS. The contract between WRS and Morse contained a warranty clause that provided, "Contractor warrants and guarantees all work and/or materials provided under this agreement shall be of good quality and workmanship, free from faults and defects and in conformance with this Agreement. Contractor further agrees to make good, at its own expense, any defect in materials or workmanship which may appear within one (1) year of Contractor's substantial completion hereunder." Importantly, WRS warrantied not only its own work, but also Penhall's work. Penhall did not contract with Morse and did not warranty WRS's work. The duties were not identical. Any warranty claim by Morse necessarily had to be on the broader warranty given by WRS. And, it is clear that WRS and Penhall had potentially adverse positions as to who may have caused Morse's damages.

Second, the contract between WRS and Morse provided for mediation and binding arbitration.[6] The earlier entered contract between WRS and Penhall did not contain a mediation and arbitration provision.

---

[6] The contract provided for mediation and arbitration as follows:

Contracting Party and Contractor agree that all claims, collections, disputes, or other controversies arising under this Agreement or related hereto, shall be settled by and subject to binding arbitration with a single arbitrator pursuant to the Construction Industry Arbitration Rules of the American Arbitration Associations ("AAA"). Any such arbitration shall be commenced by delivery to the AAA a written demand for arbitration, and a copy of such demand shall be delivered to the other party. Contracting Party and Contractor agree that the location of any arbitration proceeding commenced with

13

"[A]rbitration is a matter of contract, parties cannot be compelled to arbitrate unless they agreed to do so." Weiss v. Lonnquist, 153 Wn. App. 502, 510, 224 P.3d 787 (2009). Nonsignatories to an arbitration provision will be bound to arbitrate only when ordinary principles of agency or contract law dictate such a result. Powell v. Sphere Drake Ins., 97 Wn App. 890, 895, 988 P.2d 12 (1999). We have recognized five theories that would compel such a result: (1) incorporation by reference, (2) assumption, (3) agency, (4) veil piercing/alter ego, and (5) estoppel. Id. at 895-96 (citing Thomson-CSF, S.A. v. Am. Arbitration Ass'n, 64 F.3d 773, 776 (1995)). None of those limited exceptions are present here. Penhall never agreed to resolve its disputes with WRS through arbitration, and so cannot be compelled to do so.

The Penhall contract also contained a provision that "Penhall retains all rights allowed by law. Subcontract shall not require [Penhall] to waive any legal rights." Enforcing the WRS/Morse agreement to arbitrate against Penhall, who had not agreed to it, would be forcing Penhall to surrender its constitutional right to a jury trial to resolve its contractual dispute with WRS. WASH. CONST. art. I, § 21. We will not do so.

Penhall did not have a contractual or equitable duty to defend WRS against Morse's claim. As a result, Penhall's refusal to accept tender of defense of Morse's

---

agreement shall be at the Seattle, Washington AAA office. In any such arbitration, the prevailing party, as determined by the arbitrator, shall be entitled to its arbitration costs and reasonable attorneys' fees and other costs. Any arbitration award by the arbitrator shall be final and binding on the parties and subject to confirmation and reduction to judgment pursuant to [chapter] 7.04 [RCW] in the King County Superior Court.

claim does not estop Penhall at trial from disputing responsibility to indemnify WRS for any or all of the settlement with Morse. Evanston must prove any damages at trial.[7] The award of damages by the trial court on summary judgment is vacated.

III. Attorney Fees

The attorney fees incurred in this matter were strongly contested below both as to the legal basis and reasonableness. Whether a party in entitled to attorney fees is reviewed de novo. Baker v. Fireman's Fund Ins. Co., 5 Wn. App. 2d 604, 613, 428 P.3d 155 (2018), review denied, 192 Wn.2d 1016, 438 P.3d 111 (2019). Whether the amount is reasonable is reviewed for abuse of discretion. Id. In Washington, each side must pay their own attorney fees unless a fee award is authorized by statute, a contract, or a recognized ground in equity. In re Impoundment of Chevrolet Truck, 148 Wn.2d 145, 160, 60 P.3d 53 (2002).

In Newport Yacht Basin Association of Condominium Owners v. Supreme Northwest, Inc., we held that

> the trial court's award of attorney fees was improper. As we have previously explained, attorney fees sought pursuant to a contractual indemnity provision are an element of damages that must be proved to the trier of fact. The goal of awarding money damages is to compensate for the losses that are actually suffered, and a party claiming damages has the burden of proving its losses. Accordingly, a party seeking the recovery of attorney fees pursuant to an indemnity provision bears the burden of presenting evidence regarding the reasonableness of the amount of fees claimed.

---

[7] Much of the parties' briefing focused on whether the settlement between Morse Square and WRS was reasonable or whether it was infected by bad faith. Because the settlement is not the proper measure of damages, we need not address those issues. However, we note that the trial court correctly ruled that Penhall's motion to compel Evanston's deposition was improperly brought under CR 43(f) and that it appears to be properly denied on the merits.

> Moreover, "[a]s an element of damages, the measure of recovery . . . must be determined by the trier of fact."

168 Wn. App. 86, 102, 285 P.3d 70 (2012) (citations omitted) (alterations in original) (quoting Jacob's Meadow Owners Ass'n v. Plateau 44 II, LLC, 139 Wn. App. 743, 760, 162 P.3 1153 (2007)).

The contract between WRS and Penhall does not contain a provision authorizing attorney fees for the prevailing party. However, the indemnification language in the contract acknowledges that attorney fees may be recovered in a contract dispute to the extent directly caused by Penhall. This requires attorney fees be proved as consequential damages. Id.

A party may be entitled to attorney fees as part of an equitable indemnity claim under the ABC rule. "'When the natural and proximate consequences of a wrongful act of A involve B in litigation with others, B may as a general rule recover damages from A for reasonable expenses incurred in that litigation, including attorney's fees." Blueberry Place, 126 Wn. App. at 358 (emphasis added) (quoting Dauphin v. Smith, 42 Wn. App. 491, 494, 713 P.2d 116 (1986)). It is well established Washington law that "'a party may not recover attorney fees under the theory of equitable indemnity if, in addition to the wrongful act or omission of A, there are other reasons why B became involved in litigation with C.'" Newport, 168 Wn App at 106 (quoting Blueberry Place, 126 Wn. App. at 359). "[W]here the acts or omissions of a party to an agreement or event have exposed one to litigation by third persons—that is, to suit by persons not connected with the initial transaction or event—the allowance of attorney's fees may be a proper element of

16

consequential damages." Armstrong Constr. Co. v. Thomson, 64 Wn.2d 191, 195, 390 P.2d 976 (1964).

The trial court did not take evidence on the issue of consequential damages under the indemnification clause and made no finding that evidence proved those fees were incurred as consequential damages under the contract indemnification. The argument for the award of attorney fees below was based on the ABC rule under equitable indemnity. But, the scope of recoverable fees is limited to those incurred in defending the action brought by the third party. Blueberry Place, 126 Wn. App. at 358. The ABC rule does not encompass recovery of attorney fees incurred prosecuting the collection of the settlement or judgment in the third party action. However, the trial court erroneously awarded the fees both from the WRS/Morse action and those incurred in the present action. We vacate the award of attorney fees.

IV. Costs on Appeal

Both sides now request costs on appeal pursuant to RAP 14.1-14.6. Because Penhall has substantially prevailed on appeal, we award it costs for this appeal.

We reverse and remand for proceedings consistent with this opinion.

_Appelwick, J._

WE CONCUR:

_Brunn, J_        _Chun, J._