STATE OF MAINE
Cumberland, ss

BUSINESS AND CONSUMER COURT
Location: Portland
Docket No.: BCD-CV-14-44 ✔

EMERA MAINE            )
                      )
        Plaintiff     )
                      )
   v.                 )
                      )
CPM CONSTRUCTORS      )
                      )
        Defendant     )
                      )

## ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

Plaintiff Emera Maine ("Emera") and Defendant CPM Constructors ("CPM") have each moved for summary judgment on Emera's claim that CPM is contractually required to indemnify Emera for damages and other expenses incurred by Emera in a third-party action brought against CPM and Emera's predecessor, Bangor Hydro-Electric Company.

Oral argument was held September 1, 2015.

Based on the entire record, both motions are granted in part, and otherwise denied.

### I. Background

At some time prior to January 31, 2005, CPM, a construction business, was awarded a contract to perform a major roadway realignment on Route 1A, in Dedham Maine. At all times relevant to this dispute, Bangor Hydro-Electric Company ("BHE"), now operating as Emera, owned land running alongside portions of Route 1A in Dedham Maine by virtue of a "Quit-Claim Deed With Covenant" from George Pressley, Jr. recorded at the Hancock County Registry of Deeds in Book 2778, Page 153 (the "Quit-Claim Deed").

The Quit-Claim deed provides that it is:

SUBJECT To the protective covenants pertaining to the herein conveyed premises contained in the Declaration of Protective Covenants executed by Grantor and

Katherine R. Pressley, of even date, to be recorded in the Hancock County Registry of Deeds just prior to this deed

The restrictive covenants in question limit the uses and activities allowed on the property conveyed to BHE, particularly at elevations below 1100 feet.

On or about January 31, 2005, CPM and BHE entered into a written contract called Agreement (hereinafter "the Agreement"), by which BHE authorized CPM to take certain actions on BHE's property, including harvesting trees and disposing of fill, rock, aggregate, and other earthen material.

The Agreement recites that BHE "is the owner of certain land in said Dedham by virtue of a deed from George Pressley, Jr. recorded at the Hancock County Registry of Deeds in Book 2778, Page 153[.]" However, the Agreement does not state that the BHE property is subject to any restrictive covenants. Moreover the record before the court does not indicate that BHE told CPM about the restrictive covenants or that CPM had actual knowledge of the restrictive covenants affecting BHE's property. On the other hand, the record before the court also does not indicate that BHE specifically knew that the activity it was authorizing CPM to pursue on BHE's property would violate any of the restrictive covenants.

The Agreement contains the following indemnification provision:

CPM shall indemnify and hold harmless BHE, its successors and assigns, against any and all claims, suits, damages or causes of action (including attorney's fees) which may arise as a result of the activities contemplated herein.

The Agreement also contains a provision requiring CPM to pay BHE $0.25 per cubic yard of clean fill, including stumps, rocks and other earthen materials, deposited by CPM on BHE's property.

Pursuant to the Agreement, CPM cut and cleared trees from a portion of BHE's land and disposed of about 40,000 cubic yards of fill on BHE's land. CPM concedes it has not paid the per cubic yard payment called for by the Agreement.

By means of a complaint dated December 15, 2009, filed in the Hancock County Superior Court, Tonya and Christian Andersen, the owners of the property benefited by the Declaration of Protective Covenants, brought suit against BHE and CPM for breach of covenant, nuisance, and infliction of emotional distress. The Andersen lawsuit arose solely out of CPM's activity on BHE's land, not out of any independent act or omission of BHE. BHE and CPM asserted cross-claims against each other in the Andersen lawsuit, but did not pursue the claims, based on an agreement to postpone all such claims until after the Andersen lawsuit had been resolved. The Andersens' claims were tried to a jury, which found BHE liable to the Andersens for breach of restrictive covenant, and found both BHE and CPM not liable for nuisance.

In March 2014, Emera, as successor to BHE, brought this action against CPM. Emera's four-count Complaint recites a breach of contract claim (Count I) based on CPM's failure to indemnify BHE/Emera pursuant to the Agreement for the amount in damages, interest and costs incurred by BHE in connection with the Andersen lawsuit; another breach of contract claim (Count II) based on CPM's failure to indemnify BHE/Emera pursuant to the Agreement for BHE's attorney fees incurred in the Andersen lawsuit; a third breach of contract claim (Count III) for the amount due to BHE/Emera for the cubic yards of fill placed on the property, and a claim for unjust enrichment (Count IV) seeking damages measured by the benefit to CPM of the value of the use of the BHE property.

CPM filed a counterclaim against Emera on May 1, 2014 seeking damages for the attorneys' fees and costs of litigation incurred in its defense of the Andersen Suit. The court

3

has previously granted Emera summary judgment on CPM's counterclaim. *See* Order on Plaintiff's Motion for Summary Judgment (Aug. 11, 2014).

The present motions focus on Emera's right to indemnification under the Agreement provision requiring CPM to indemnify BHE, now Emera, against "any and all claims, suits, damages or causes of action (including attorney's fees) which may arise as a result of the activities contemplated" under the Agreement. Emera also seeks summary judgment on its claim that CPM owes $10,000 for the 40,000 cubic yards of fill placed on the property, and CPM does not dispute that aspect of Emera's motion.

## II. *Analysis*

The disputed issues focus on the indemnification provision of the Agreement. Emera's motion contends that, on its face, the provision entitles Emera to be indemnified by CPM for all amounts recovered by the Andersens against BHE, as well as for the attorney fees and expenses incurred by BHE in defending the Andersen lawsuit. CPM's cross-motion asserts that because the indemnification provision does not expressly call for Emera to be indemnified for its own negligence, and because BHE was, in effect, found negligent by the Andersen jury, Emera is not entitled to any indemnification. Emera responds by noting that BHE was never found liable for negligence, only for breach of covenant.

## A.     Standard of Review.

To survive a motion for summary judgment on a claim, "the [party asserting the claim] must establish a prima facie case for each element of [its] cause of action." *Bonin v. Crepeau*, 2005 ME 59, ¶ 8, 873 A.2d 346. Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c). A "material fact" is one that can affect the outcome of the case, and a genuine issue exists when there is sufficient evidence for a fact finder to choose between

4

competing versions of the fact. *Lougee Conservancy v. CitiMortgage, Inc.*, 2012 ME 103, ¶ 11, 48 A.3d 774. Although parties may differ as to the legal conclusions to draw from the record, summary judgment is proper where the facts are not in dispute. *S.D Warren Co. v. Town of Standish*, 1998 ME 66, ¶9, 708 A.2d 1019 (Me. 1998). The court views the evidence in the light most favorable to the non-moving party. *Webb v. Haas*, 1999 ME 74, ¶ 18, 728 A.2d 1261.

B.  The Indemnification Provision Does Not Entitle Emera/BHE to Be Indemnified For Its Own Negligence or Other Fault

Maine law supports CPM's contention that the indemnification provision in the Agreement does not require CPM to indemnify Emera/BHE for BHE's own negligence, because the provision does not specifically extend to indemnification for negligence. *See McGraw v. S.D. Warren Co.*, 656 A.2d 1222, 1224 (Me. 1995) (contract indemnifying defendant for "any claims" not sufficiently specific to require indemnification for defendant's own negligence). CPM contends that because BHE was found to be negligent in the Andersen lawsuit, Emera is collaterally estopped from seeking indemnification.

Emera's response does not challenge the premise that the Andersen verdict is *res judicata* for some purposes, but points out that the Andersen jury found BHE liable only for breach of covenant, not for negligence. In rejoinder, CPM points out that the jury was instructed at trial that it could find BHE liable for breach of covenant only if it found that BHE was negligent.

Regarding the issue of whether BHE was specifically found negligent or not, the court agrees with CPM's position that the fact that BHE was found liable on the Andersens' claim for breach of covenant and not on a negligence claim is a distinction without a difference. The underlying principle of law—that a contractual indemnification provision needs to be specific in order to provide indemnity against negligence—actually applies more broadly, to other degrees of fault, not just negligence. *See Lloyd v. Sugarloaf Mtn. Corp.*, 2003 ME 117, ¶¶ 20-21, 833

5

A.2d 1, 6-7 (Calkins, J., dissenting). It so happens that most of the Law Court decisions on point are phrased in terms of negligence, but the principle sweeps more broadly. Moreover, as CPM points out, the jury instructions on the breach of covenant claim required, in effect, a finding that BHE was negligent as a predicate to finding BHE liable for breach of covenant.

Thus, CPM is correct that the indemnification clause in the Agreement is not worded so as to indemnify Emera for BHE's negligence or other fault. Notwithstanding that point, however, for the reasons set forth as follows, the court concludes, on the basis of the undisputed facts in the record, that CPM is not entitled to summary judgment.

C.     Emera is Entitled to Indemnification, But Only To the Extent It Is Not Seeking to Be Indemnified For Its Own Negligence or Other Fault

Although the indemnification provision in the Agreement does not afford indemnification for BHE's own negligence, it does afford indemnification otherwise. Moreover, the damages and other costs for which Emera seeks to be indemnified do result from CPM's activity on BHE's property, it being undisputed that it was CPM's work on BHE's property that triggered the Andersen lawsuit. It therefore follows that Emera is indeed entitled to indemnification from CPM except to the extent the damages and other costs were the result of BHE's own negligence.

CPM's summary judgment argument relies substantially on the case of *McGraw v. S.D. Warren Co.*, 656 A.2d 1222, 1224 (Me. 1995), in which the Law Court affirmed the trial court's decision that the indemnitor, Cianbro Corporation, was not liable to indemnify the indemnitee, S.D. Warren Company, for damages and other expenses incurred by S.D. Warren in connection with a Cianbro employee's personal injury action against S.D. Warren. The result in *McGraw* rests on two findings by the trial court, both upheld by the Law Court: "[T]hat Cianbro did not specifically agree to indemnify Warren for damages caused by Warren's own negligence

6

*and that no negligence on the part of Cianbro was a proximate cause of McGraw's injuries."* Id. at 1223 (emphasis added).

To obtain summary judgment, CPM had to show both that it did not specifically agree to indemnify BHE for damages caused by BHE's own negligence, and also that no negligence on CPM's part was a proximate cause of the Andersens' injuries. CPM has satisfied the former element but not the latter one. CPM's argument that Emera is seeking indemnification for BHE's negligence is based on the Andersen jury's verdict against BHE on the breach of covenant claim. Assuming that verdict reflects, in effect, a finding that BHE was negligent, as CPM contends, nothing in the record suggests that the jury found CPM not negligent or not at fault in causing the Andersen's injuries. The jury never addressed whether CPM was liable to the Andersens for breach of covenant or liable to BHE on a crossclaim, presumably because CPM was not a party to the covenant, and because Emera and CPM elected to defer any crossclaims against each other.[1]

To defeat CPM's motion, Emera had to make a *prima facie* showing that CPM is liable to Emera for at least some of the damages and expenses claimed by Emera pursuant to the indemnification provision. This Emera has done by showing that CPM agreed to indemnify BHE for any and all claims and damages arising out of CPM's activity, and that it was CPM's activity, and not any independent act or omission of BHE, that caused the injury for which the Andersens recovered damages.

On the other hand, to defeat Emera's motion for summary judgment, CPM had to show, first that the Agreement does not indemnify BHE against its own negligence or fault,

---

[1] CPM points out that the Andersen jury was instructed to apportion damages between BHE and CPM, and assessed no damages against CPM. This presumably is to suggest that the jury did consider CPM's degree of fault. However, the jury instructions make it clear that the jury should apportion damages only if it found both BHE and CPM liable to the Andersens. *See* Def's Statement of Material Facts, Ex. G at 4. The question of CPM's degree of fault for the breach of covenant was not decided in the Andersen lawuit.

7

and second, that there is a genuine issue as to whether the damages and other expenses for which Emera seeks indemnification were due partly or entirely to BHE's own negligence or fault. The jury verdict against BHE is sufficient to reveal that genuine issue and defeat Emera's motion.

Emera argues that not granting it summary judgment on Counts I and II of its Complaint detracts from the value of indemnification agreements. However, the denial of Emera's motion simply reflects the longstanding principle of Maine law that an indemnification contract must be specific in order to afford indemnification against the indemnitor's own negligence or fault. The Agreement, as drafted, cannot be read to require CPM to indemnify BHE against any damages, etc. arising from CPM's activity regardless of whether the damages, etc. were wholly or partly caused by BHE's own negligence or other fault.

D.    Each Party is Entitled to Partial Summary Judgment

As noted above, CPM acknowledges that Emera is entitled to summary judgment on the claim in Count III of the Complaint that CPM owes Emera $0.25 per cubic yard deposited on the BHE property, for a total of $10,000. Given that Emera is being awarded judgment as prayed for on Count III, there does not appear to be any basis for Count IV of Emera's complaint, which seeks recovery in restitution for unjust enrichment. Any enrichment of CPM was limited to its use of the property, which the parties agreed was worth $0.25 per cubic yard of fill deposited there. If Emera fails to prevail on its indemnification claims in Counts I and II of the Complaint, it would be only because it is not entitled to be indemnified for its own fault, and nothing in such a result would unjustly enrich CPM. Therefore, CPM is granted summary judgment on Count IV of Emera's Complaint.

8

*III. Conclusion*

It is hereby ORDERED AND ADJUDGED AS FOLLOWS:

1. Plaintiff's Motion for Summary Judgment is denied as to Counts I and II of the Complaint, and granted as to Count III. Defendant's Motion for Summary Judgment is denied as to Counts I, II and III of the Complaint, and granted as to Count IV.

2. Judgment on Count III of the Complaint is hereby awarded to Plaintiff Emera Maine against Defendant CPM Constructors in the amount of $10,000.00 pursuant to paragraph 5 of the Agreement.

3. Judgment on Count IV of the Complaint is hereby awarded to Defendant CPM Constructors.

Because Plaintiff's claims in Counts I and II of the Complaint remain pending, this Order does not constitute a final judgment, and any award of costs is deferred to final judgment. The Clerk will schedule a further conference of counsel at which the remaining issues and phases of the case will be discussed and defined.[2]

Pursuant to M.R. Civ. P. 79(a), the Clerk is hereby directed to incorporate this Order by reference in the docket.

Dated September 9, 2015

A.M. Horton
Justice, Business & Consumer Court

---

[2] Among other issues remaining, there is an issue as to burden of persuasion on the issue of whether, and to what extent, BHE's negligence was a proximate cause of the damages and other expenses for which Emera seeks indemnification. One view is that Emera's initial burden is to show the existence of a valid indemnification agreement and that the amounts for which it seeks indemnification are within the scope of the agreement, at which point the burden shifts to CPM to show that some or all of the losses for which Emera seeks indemnification were proximately caused by BHE's negligence or other fault. Another view is that Emera has to show BHE was not negligent or at fault.

Entered on the Docket: 9-10-15
Copies sent via Mail __ Electronically ✓

**Emera Maine v. CPM Constructors**
**BCD-CV-14-44**


**Emera Maine**
     **Petitioner / Plaintiff**

        Counsel:                  David Walker, Esq.
                                  Allison Economy, Esq.
                                  84 Harlow St.
                                  PO Box 1401
                                  Bangor, ME 04402-1401


**CPM Constructors**
     **Respondent / Defendant**

        Counsel:                  Andrew Sparks, Esq.
                                  One Monument Way
                                  Portland, ME 04101

STATE OF MAINE
Cumberland, ss

BUSINESS AND CONSUMER COURT
Location: Portland
Docket No.: BCD-CV-14-44

EMERA MAINE                        )
                                   )
              Plaintiff            )
                                   )
       v.                          )
                                   )
CPM CONSTRUCTORS                   )
                                   )
              Defendant            )
                                   )

## ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Emera Maine ("Emera") moves for summary judgment on the Counterclaim of Defendant CPM Constructors'("CPM") for breach of contract (Count I); negligence (Count II); misrepresentation (Count III); and equitable indemnification (Count IV).

As agreed by the parties, the court decides the motion without oral argument. *See* M.R. Civ. P. 7(b)(7). For the reasons discussed below, the court grants Emera's Motion as to all counts of CPM's Counterclaim.

### I. Background

At some time prior to January 31, 2005, CPM was awarded a contract to perform roadwork on Route 1A, in Dedham Maine. Emera's Supp. S.M.F., ¶ 1. At all times relevant to this dispute, Bangor Hydro-Electric Company ("BHE"), now operating as Emera, owned land running alongside portions of Route 1A in Dedham Maine by virtue of a "Quit-Claim Deed With Covenant" from George Pressley, Jr. recorded at the Hancock County Registry of Deeds in Book 2778, Page 153 (the "Quit-Claim Deed"). CPM's Opp. S.M.F., ¶¶ 2-3; Exhibit D to Emera's Supp. S.M.F., Quit-Claim Deed.

On or about January 31, 2005, CPM and BHE entered into a written contract authorizing CPM to take certain actions on BHE's property, including harvesting trees and disposing of fill, rock, aggregate, and other earthen material (the "Roadwork Contract"). Exhibit A to CPM's Opp. S.M.F., Roadwork Contract; CPM's Opp. S.M.F., ¶¶2, 6. The Roadwork Contract recited that BHE "is the owner of certain land in said Dedham by virtue of a deed from George Pressley, Jr. recorded at the Hancock County Registry of Deeds in Book 2778, Page 153[.]" Exhibit A. to CPM's Opp. S.M.F., Roadwork Contract. The Roadwork Contract further provided that:

> CPM shall indemnify and hold harmless BHE, its successors and assigns, against any and all claims, suits, damages or causes of action (including attorney's fees) which may arise as a result of the activities contemplated herein.

*Id.* The Quit-Claim Deed, referenced in the Roadwork Contract, provides that it is:

> SUBJECT To the protective covenants pertaining to the herein conveyed premises contained in the Declaration of Protective Covenants executed by Grantor and Katherine R. Pressley, of even date, to be recorded in the Hancock County Registry of Deeds just prior to this deed

Exhibit D to Emera's Supp. S.M.F., Quit-Claim Deed.

The Declaration of Protective Covenants referenced in the Quit-Claim Deed, places a number of restrictions upon the deeded land. Exhibit E to Emera's Supp. S.M.F., Exhibit C therein, Declaration of Protective Covenants.

Pursuant to the Roadwork Contract, CPM cut and cleared trees from a portion of BHE's land and disposed of fill, rock, aggregate, and other earthen material on BHE's land. Emera's Supp. S.M.F., ¶¶ 5-6.

By means of a complaint dated December 15, 2009, filed in the Hancock County Superior Court, Tonya and Christian Andersen, the owners of the property benefited by the Declaration of Protective Covenants, brought suit against BHE and CPM for breach of covenant, nuisance, and infliction of emotional distress (the "Andersen Suit"). Exhibit E to

2

Emera's Supp. S.M.F., Andersens' Complaint, Counts I through V. The Andersen Suit arose out of CPM's activity on BHE's land under the Roadwork Contract. *Id.* at ¶¶ 11, 15-43. BHE and CPM asserted cross-claims against each other in the Andersen Suit, but did not pursue the claims due to an agreement to postpone all such claims until resolution of the Andersen Suit. CPM's A.S.M.F., ¶ 6.

In a post-trial order on the taxation of costs in the Andersen Suit, the Superior Court noted that CPM and BHE "presented what amounted to a joint defense." Exhibit G to Emera's Supp. S.M.F., Hancock County Superior Court Post-Trial Order on Costs, 1. The Andersens eventually obtained judgment against BHE for breach of covenant. CPM's A.S.M.F., ¶ 4. CPM was not found liable on any of the Andersens' claims. *Id.*

The Superior Court's post-trial order on costs awarded the Andersens as prevailing parties costs against Emera, and awarded CPM as prevailing party costs against the Andersens. .Exhibit G to Emera's Supp. S.M.F., *supra* at 1. The court explained the latter award by noting that "Plaintiffs did not prevail over CPM. Although the question of CPM's liability for violating the restrictive covenant was not actually determined, it was not necessary to decide that issue because, regardless of the outcome, the plaintiffs were not going to be awarded injunctive relief against CPM, as the court's decision on the issue clearly indicated". *Id.* The court also declined the Andersens' suggestion that Emera, rather than they, be ordered to pay CPM's costs, "because CPM did not have a claim against [Emera] upon which it prevailed." *Id.* at 2.

In March 2014, Emera brought this action against CPM, seeking indemnification, pursuant to the Roadwork Contract, for the judgment entered against Emera in the Andersen Suit. CPM filed its Counterclaim against Emera on May 1, 2014 seeking damages for the attorneys' fees and costs of litigation incurred in its defense of the Andersen Suit.

*II. Analysis*

The damages CPM seeks to recover in its Counterclaim consist only of the attorney fees and unreimbursed costs CPM incurred in defending the Andersen Suit. CPM's Opp. to Motion, 2 ("CPM counterclaimed, seeking damages for the attorneys' fees and costs of litigation incurred from defending itself from the Andersens' claims"). Emera asserts and CPM agrees that "the sole issue presented for resolution on Emera's Motion for Summary Judgment is whether CPM may recover its attorneys' fees and costs from the Andersen Suit as damages in this action." CPM Opp. to Motion at 3. *See* Emera's Motion, 4-6.

All of the claims advanced in the counts of CPM's Counterclaim require proof of actual damages.[1] Therefore, if, as a matter of law, CPM cannot recover its attorney fees and costs incurred in the Andersen Suit, it cannot recover damages on any of the counts in its Counterclaim, and Emera would be entitled to summary judgment.

Emera's Motion asserts that: (1) principles of *res judicata* bar CPM from recovering its costs; and (2) the American Rule prohibits CPM from recovering its costs and attorneys' fees incurred in the Andersen Suit. CPM responds by arguing that *res judicata* does not bar its claims, and that its claims fall within the "collateral litigation" exception to the American Rule.

A.    Standard of Review.

To survive a motion for summary judgment on a claim, "the [party asserting the claim] must establish a prima facie case for each element of [its] cause of action." *Bonin v. Crepeau*, 2005 ME 59, ¶ 8, 873 A.2d 346. Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c). A "material fact" is one that can affect the outcome of the case, and a genuine issue exists when there is sufficient evidence for a fact finder to choose between

---

[1] *See In re Hannaford Bros. Co. Customer Data Security Breach Litigation*, 2010 ME 93, ¶ 8, 4 A. 3d 492

4

competing versions of the fact. *Lougee Conservancy v. CitiMortgage, Inc.*, 2012 ME 103, ¶ 11, 48 A.3d 774. Although parties may differ as to the legal conclusions to draw from the record, summary judgment is proper where the facts are not in dispute. *S.D Warren Co. v. Town of Standish*, 1998 ME 66, ¶ 9, 708 A.2d 1019 (Me. 1998). The court views the evidence in the light most favorable to the non-moving party. *Webb v. Haas*, 1999 ME 74, ¶ 18, 728 A.2d 1261.

B.     Principles of Res Judicata Do Not Bar CPM's Claim for Costs From the Andersen Suit

Emera argues CPM is precluded under principles of *res judicata* from recovering the costs it incurred in the Andersen Suit because these costs were already denied to CPM. *Res judicata* and its companion doctrine of collateral estoppel are jurisprudential doctrines "designed to ensure that the same matter will not be litigated more than once." *Macomber v. Macquinn-Tweedie*, 2003 ME 121, ¶ 22, 834 A.2d 131 (quoting *Machias Sav. Bank v. Ramsdell*, 1997 ME 20, ¶ 11, 689 A.2d 595.) *See also* Emera's Motion, 11-12.

CPM responds that (1) Emera waived its right to assert a *res judicata* defense; (2) Emera is estopped from asserting *res judicata*; and (3) in any event, the Andersen court did not address whether CPM could recover its costs from Emera. CPM's Opp. to Motion, 9.[2]

"Waiver is the voluntary and knowing relinquishment of a right and may be shown by a course of conduct signifying a purpose not to stand on a right, and leading, by a reasonable inference, to the conclusion that the right in question will not be insisted upon." *Dep't of Health and Human Servs. v. Pelletier*, 2009 ME 11, ¶ 16, 964 A.2d 630. "Equitable estoppel precludes a party from asserting rights which might perhaps have otherwise existed against another person who has in good faith relied upon such conduct, and has been led thereby to change his position

---

[2] CPM also asserted that Emera had waived the *res judicata* defense because it was not raised in its answer to CPM's Counterclaim. This argument is now moot because Emera, with CPM's permission, filed an Amended Answer to CPM's Counterclaim raising *res judicata* as a defense.

5

for the worse, and who on his part acquires some corresponding right." *Blue Star Corp. v. CKF Props., LLC,* 2009 ME 101, ¶27, 980 A.2d 1270.

Here, it is undisputed that BHE and CPM agreed to postpone resolution of all claims they might have against each other relating to the Andersen Suit. CPM's A.S.M.F., ¶6. The parties agree that, in reliance on that agreement, CPM did not pursue its cross-claim against BHE in the Andersen Suit. CPM's Opp. to Motion, 9-11; Emera's Reply, 5-6.

The order on costs in the Andersen Suit focused on the Andersens' request for costs against BHE, and CPM's request for costs against the Andersens. *See* Exhibit G to Emera's Supp. S.M.F., Hancock County Superior Court Post-Trial Order on Costs. In the course of denying the Andersens' suggestion that BHE rather than they should pay CPM's costs, the court noted that, because CPM was not a prevailing party in the case as to BHE, the court could not order BHE to pay CPM's costs. *Id.* CPM did not prevail against BHE because CPM agreed to defer its cross-claim, not because CPM's cross-claim was adjudicated in favor of BHE. Accordingly, neither CPM's cross-claim itself nor any entitlement to damages or costs associated with the cross-claim was adjudicated in the Andersen Suit, and CPM's Counterclaim is not barred by res judicata or collateral estoppel.

C.      CPM's Claims for Attorney Fees and Costs Are Not Within the Collateral Litigation Exception to the American Rule

The American Rule provides that, "absent a statutory provision or contractual agreement, litigants bear their own attorney fees and litigation costs." *Colquhoun v. Webber,* 684 A.2d 405, 413 (Me. 1996). CPM does not assert any statute or contract as the basis for its claim for the attorney fees and costs incurred in the Andersen Suit.

CPM instead argues that its claims fall within another exception to the American Rule—the "collateral litigation" exception, sometimes called the "tort of another" exception.

6

The Restatement (Second) of Torts expresses the American Rule and the collateral litigation exception to it, as follows

> (1) The damages in a tort action do not ordinarily include compensation for attorney fees or other expenses of the litigation
>
> (2) One who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action.

Restatement (Second) of Torts § 914 (1979).

The status of the collateral litigation exception in Maine is uncertain. In *Soley v. Karll,* the Law Court noted that "Maine has not recognized the collateral litigation exception to the American rule . . .". 2004 ME 89, ¶ 11 n.3, 853 A.2d 775, 758 n.3. However, in an earlier decision, the Law Court espoused what appears to be the collateral litigation exception, without labeling it as such: "Where the wrongful act of a defendant has involved the plaintiff in litigation with others, or placed him in such relation to others as makes it necessary for him to incur expense to protect his interest, such costs and expenses, including attorneys' fees, must be treated as the legal consequence of a wrongful action and may be recovered as damages." *Gagnon v. Turgeon,* 271 A.2d 634, 635 (Me. 1970). This Order treats the collateral litigation exception as having been recognized in Maine in substance, if not in name.

The court in *Gagnon* also noted an important limitation on the collateral litigation exception to the American Rule: the exception "does not apply to attorneys' fees incurred in litigation between the plaintiff and the defendant or persons in privy to the contract agreement or events through which the litigation arises." *Id.* at 635-36 (citing *Armstrong Construction Co. v. Thomson,* 64 Wash.2d 191, 390 P.2d 976).

The cited *Armstrong Construction* opinion explains the rationale for both the exception and the limitation on the exception as follows:

7

In those actions, where the acts or omissions of a party to an agreement or event have exposed one to litigation by third persons-that is, to suit by persons not connected with the initial transaction or event-the allowance of attorney's fees may be a proper element of consequential damages. . . . The fulcrum upon which the rule balances, then, is whether the action, for which attorney's fees are claimed as consequential damages, is brought or defended by third persons-that is, persons not privy to the contract, agreement or events through which the litigation arises.

*Armstrong Constr. Co. v. Thomson*, supra at 195-196, 390 P.2d at 979, *quoting Wells v. Aetna Ins. Co.*, 60 Wash.2d 880, 376 P.2d 644 (1962).[3]

Applied to this case, the "fulcrum upon which the rule balances" tilts against CPM.

This case—"the action, for which attorney's fees are claimed as consequential damages"—is not

"brought or defended by third persons-that is, persons not privy to the contract, agreement or

events through which the litigation arises." CPM and Emera (then BHE) were both privy to

the events in the underlying Andersen Suit, and are in privity through the Roadwork Contract.

---

[3] In *Armstrong*, the builder of a home brought a lien action against the home owner, and the owner. The owners joined the architects to the suit as third-party defendants, demanding judgment against the architects for any amounts the builder might recover against the owners, and the owners' attorneys' fees for defending against the builder's suit. *Id.* at 977-78. The court determined that "[i]n the instant case, both the builder and the architect were privy to the construction contract; therefore, neither could be classified as third persons and the trial court properly excluded the owner's [sic] claim for attorney's fees reasonably incurred in defending the builder's lien foreclosure." *Id.* at 979-80.

Another Washington case illustrates the same principle, in the context of privity by virtue of events rather than privity of contract. In *Manning v. Loidhamer*, the State of Washington was named as a defendant in a motor vehicle accident case, and the State asserted cross-claims against the other defendants for indemnification. 3 Wash.App. 766, 538 P.2d 136, *rev. den.*, 86 Wash. 1001 (1975). The State was found not liable to the plaintiff and it requested an award of its attorneys fees incurred in defending the case, against the defendants who were found liable to the plaintiff. 3 Wash.App. at 768, 538 P.2d at 138. The court rejected the State's attorney fee claim on the basis of the rule in *Armstrong*:

As in Armstrong, the State was privy to the events 'through which the litigation' arose. Armstrong involved a contract but the principle also applies to tort actions.

3 Wash.App. at 773, 538 P.2d at 141.

8

The reason why parties who are linked—"privy"—by virtue of a contract or events at issue in the underlying litigation cannot later take advantage of the collateral litigation exception is that they can implead each other in the underlying litigation by virtue of that connection, and such claims can and should be brought in the underlying litigation:

> The [collateral litigation exception] rule enabling recovery of attorneys' fees is designed to prevent the injustice of a situation where a blameless party must prosecute or defend an action in which the true party at fault cannot be brought into the litigation and made to indemnify the blameless party. The rule was created to aid the party who must litigate two actions to vindicate his rights: the first because of the wrongful conduct of a third party and the second for indemnity from the wrongdoer. By allowing attorneys' fees from the first action to be recovered in the second, the blameless party is made whole, put where he would have been but for the wrongful acts. *Where, as here, the party at fault could be joined in the first action, the inequitable situation does not exist. The blameless party has immediate recourse, and application of the rule is unnecessary.*

*G & D Co. v. Durand Milling Co., Inc.*, 67 Mich.App. 253, 258, 240 N.W.2d 765, 767-68 (1976) (emphasis added).

The *G & D Co. v. Durand Milling Co., Inc.* opinion also points out that to interpret the collateral litigation exception to allow for recovery of attorney fees and costs on claims that could have been asserted in the underlying litigation would be bad jurisprudential policy: "With such precedent, [a party] would be foolish to implead an indemnitor. The longer the alleged wrongdoer remains out of the case, the more attorneys' fees could be charged against him. If the other party to the action did not bring in the third party wrongdoer or if the third party could not intervene, needless and repetitious litigation would be encouraged."

The circumstances of this case illustrate why the collateral litigation exception "does not apply to attorneys' fees incurred in litigation between the plaintiff and the defendant or persons in privy to the contract agreement or events through which the litigation arises." *Gagnon v. Turgeon, supra*, 271 A.2d at 635-36. The reason is that, without that limitation, the collateral exception litigation would swallow the American Rule, by permitting attorney fees

9

subject to the American rule to be claimed as damages in separate litigation. That is precisely what CPM's counterclaim seeks to accomplish.

Had CPM pursued its cross-claim in the Andersen Suit, CPM's recovery on its cross-claim against BHE would have been limited to indemnification for any damages awarded to the Andersens against CPM, and would not have included attorney fees. As noted at the outset, CPM's claims do not rest on any contractual fee-shifting provision, so the American Rule would have applied to CPM's cross-claim had it been pursued in the Andersen Suit. But since CPM was not found liable to the Andersens, there was no liability for Emera to indemnify.

CPM cannot avoid the American Rule on attorney fees by deferring its claim to this case. The rule that the collateral litigation exception does not apply to claims by parties "privy" to the contract or events in the underlying litigation is designed to prevent exactly such circumlocution of the American Rule.

Likewise, by deferring its claim to this case, CPM cannot seek as damages in this case costs that it would not have been awarded in the Andersen Suit even if it had pressed its cross-claim against BHE. No damages were awarded against CPM, so the jury would not have had to reach CPM's cross-claim, and CPM would not have recovered costs against BHE as a prevailing party. In other words, CPM's cross-claim may have been deferred by agreement, but it disappeared as a result of the verdict in its favor on the Andersens' claims against it.

Although CPM's counterclaim is labeled as asserting contract, negligence and equitable claims, all of CPM's theories of liability seek relief in the nature of indemnification for attorney fees and costs as to which CPM is not entitled to be indemnified.

Under CPM's view of the law, any co-defendant who was found not liable in a case could bring a later action to recover attorney fees against the co-defendant who was found liable to the plaintiff in the underlying case, on the theory that the at-fault defendant caused the

10

non-negligent defendant to be sued and to incur legal fees and costs. That actually was the argument made to and rejected by the Michigan court in the *Manning v. Loidhamer* case discussed in note 3, *supra*. In denying the State's attorney fee claim against co-defendants, the court noted that

> the State was privy to the events 'through which the litigation' arose. . . The State emphasizes that the jury absolved it of negligence. This fact is not the determining consideration in allowing attorney's fees as damage by one defendant against another. If it were, every defendant found not negligent could recover attorney's fees against another defendant who was found negligent. We have been cited to no case which goes that far.

13 Wash. App. 766. 773-74, 538 P.2d 136, 141 (1975).

### III. Conclusion

Plaintiff Emera Maine is entitled to summary judgment on all four counts of CPM's Counterclaim, because CPM's damages consist only of its attorney fees and costs incurred in the Andersen Suit and because it cannot recover such damages as a matter of law. Whether or not the collateral litigation exception exists in Maine law, it does not apply here. The entry will be: Plaintiff Emera Maine's Motion for Summary Judgment is granted. Judgment shall be entered for Plaintiff Emera Maine on the Counterclaim of Defendant CPM Constructors.

Pursuant to M.R. Civ. P. 79(a), the Clerk is hereby directed to incorporate this Order by reference in the docket.

Dated August 11, 2014

A.M. Horton
Justice, Business & Consumer Court

Entered on the Docket: 8-11-14
Copies sent via Mail ___ Electronically ✓

11

**Emera Maine v. CPM Constructors**
**BCD-CV-14-44**


**Emera Maine**
    **Petitioner / Plaintiff**

      Counsel:               David Walker, Esq.
                               Allison Economy, Esq.
                               84 Harlow St.
                               PO Box 1401
                               Bangor, ME 04402-1401




**CPM Constructors**
    **Respondent / Defendant**

      Counsel:               Andrew Sparks, Esq.
                               One Monument Way
                               Portland, ME 04101